FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 10, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMIE H.,[1] <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | No.   2:24-cv-00052-EFS <br><br> **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff Amie H. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred when analyzing the medical opinions, but the parties disagree about the appropriate remedy. Plaintiff seeks a remand for payment of benefits, while the Commissioner seeks a remand for further proceedings. After reviewing the record and relevant authority, the Court remands the case for further proceedings.

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER - 1

I.      Background

This case has a long history: there have been three denials of disability by ALJs and two prior remands by this Court. It is now before the Court a third time for review.

In October 2017, Plaintiff filed applications for benefits under Title 2[2] and Title 16, alleging disability due to depression, chronic anxiety, post-traumatic stress disorder (PTSD), multiple sclerosis, vertigo, and migraine headaches.[3] Plaintiff claimed an onset date of October 15, 2013.[4]

Plaintiff's claims were denied at the initial and reconsideration levels.[5] Following the denials, Plaintiff attended a hearing with his attorney before ALJ R.J. Payne.[6] Plaintiff testified, vocational expert Sharon Walters testified, medical expert Steven Reuben, PhD, testified, and medical expert James Haynes, MD, testified.[7] On September 9, 2019, ALJ Payne issued a decision denying benefits.[8]

---

[2] Plaintiff filed Title 2 claims under both his own earnings record and his parent's earning record as a disabled adult child.

[3] AR 362, 369, 376, 415.

[4] AR 362.

[5] AR 229, 233, 238, 245, 250, 254.

[6] AR 35-95.

[7] Id.

[8] AR 14-34.

The Appeals Council denied review.[9] Following the Appeals Council denial, Plaintiff filed an appeal in this Court, and on July 19, 2021, this Court issued an order remanding the case for further proceedings and directing that the ALJ reevaluate the medical evidence, reevaluate Plaintiff's subjective complaints, and conduct a five-step evaluation.[10]

On January 19, 2022, the Appeals Council issued a remand order and on August 23, 2022, Plaintiff appeared with her attorney before ALJ Jesse Shumway for a telephone hearing.[11] The Plaintiff offered testimony and no medical or vocational expert testified.[12] On September 15, 2022, ALJ Shumway issued a decision denying benefits.[13] On January 20, 2023, this Court granted the parties' stipulated motion for remand and issued an order remanding the case for further proceedings.[14] On May 2, 2023, the Appeals Council remanded the case to the ALJ.[15]

---

[9] AR 1-6.

[10] AR 1292-1320.

[11] AR 1321, 1234-1260.

[12] Id.

[13] AR 1203-1233.

[14] AR 2537-2541.

[15] AR 2542-2548.

On May 2, 2023, Plaintiff appeared with her attorney via telephone for a second hearing before ALJ Shumway.[16] Plaintiff testified and no medical expert or vocational expert was called to testify.[17] On December 13, 2023, ALJ Shumway issued a second decision denying benefits.[18] Plaintiff filed a timely appeal to this Court.

The ALJ found:

- Step one: Plaintiff was born in October 1991 and had not attained the age of 22 as of the onset date of October 15, 2023.

- Step One: Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: multiple sclerosis (MS), migraine headaches, depressive disorder, personality disorder, anxiety disorder, panic disorder, PTSD, and somatic symptom disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically considered listings 11.02, 11.09, 12.04, 12.06, 12.07, 12.08, and 12.15.

---

[16] AR 2488-2505.

[17] Id.

[18] AR 2453-2487.

ORDER - 4

- RFC: Plaintiff had the RFC to perform light work except that:

  [Plaintiff] can stand and walk 2 hours each at one time, and for 4 to 6 hours total in any combination in an 8-hour workday with normal breaks; she can never climb ladders or scaffolds; she can have no exposure to extreme heat and needs a normal office work setting; she can have no exposure to unprotected heights; she is able to understand, remember, and carry out simple, routine, and/or repetitive work instructions and tasks; she is able to work with or in the vicinity of coworkers but not in a teamworktype setting; she can handle normal supervision (i.e., no over-the-shoulder or confrontational-type supervision); and she is limited to performance of work in a routine setting with little or no changes, and no fast-paced or strict production-quota work.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as an office helper (DOT 239.567-020), a mail clerk (DOT 209.687-026), and a ticket seller (DOT 211.467-030).[19]

Plaintiff timely requested review of the ALJ's decision, arguing that the ALJ committed several errors.

## II.  Analysis

The parties agree the ALJ erred: the ALJ improperly found Plaintiff's subjective testimony to be inconsistent with the record, particularly with regard to Plaintiff's reports of debilitating migraine headaches. The parties disagree,

---

[19] AR 2459-2474.

however, as to whether the Court should remand for payment of benefits or for more proceedings. As is explained below, the agreed-upon error calls for further proceedings.

A.     **Remand Standard**

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course.[20] In comparison, in order for the court to consider remand for payment of benefits, three factors must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[21]

When these factors are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[22]

---

[20] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[21] *Id.* at 1101. *See Garrison v. Colvin*, 759 F. 3d 995, 1010 (9th Cir. 2014).

[22] *Treichler*, 775 F.3d at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

**B.    Remand Analysis**

The second remand factor is satisfied: the parties agree the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective testimony. The Commissioner asserts that the first prong is not satisfied because there are conflicting medical opinions which need to be reconciled. Plaintiff asserts that a remand for calculation of benefits should be entered and all three of the prongs are satisfied because the medical opinions of medical expert Dr. Haynes should be given no value because "it is contradicted by all prevailing medical knowledge."

At the hearing, a lengthy exchange took place between Dr. Haynes and Plaintiff's attorney regarding headaches and migraine headaches:

> Q. How about these headaches, because the headaches have been in the chart about the same time and this is when they got the MRI and lumbar puncture and this was felt by related to MS. They're not treating it separately.  They're treating it as a symptoms of multiple sclerosis and these are, I know you noted to the judge you didn't see this throughout.  This is throughout the entire record, the headaches.  Is that the difficulty you have, you're not seeing it throughout the record?   I can point you to some places here.
>
> A. I think it's mentioned from time-to-time, yes, but I don't see that it's kind of on the back burner because the MS is the most important thing and all, plus lots of abdominal symptoms and aches and pains here and their symptoms and maybe alleged kidney stones that don't turn out to be the case and I'm not going to get into that because that's not what I'm expert at but there's a lot of symptoms, heavy on the symptoms and light on the [inaudible]  like I said before.
>
> Q. Part of the headaches, I mean, she was in the emergency room, 4F, headaches, she, several times.  The lumbar puncture increased her headaches so she's had --

ORDER - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

  A. The lumbar puncture, I think was to diagnose the MS to confirm the diagnosis of multiple sclerosis to look for antibodies and it was normal otherwise anyway.

  Q. Okay, as far as intense headaches, I mean, Dr. Kratick seemed to relate these to the MS, an [inaudible] brain scan and has headaches evaluation. I mean maybe every evaluation noted significant.

  A. Well, no, here I'm looking at Family Practice, April of [2013] she has a sore throat. There's no mention of headaches. She has a backache. She has a normal lumbar MRI. Here in September of [2013] she has flank pain. There's no mention of headaches here, any number of records where it's not mentioned.

  Q. Okay, all they're talking about is MS, though, like MS we're looking at her vertigo, it mentions headache every day on the right side of the head, page 12 it's frequent headaches as well and fatigue, the vertigo ended up getting worse.

  ALJ: Is this what the claimant is reporting or is this what the doctor is saying?

  BY THE ATTORNEY:
  Q. Well I don't know how often the headaches are but in Dr. Kratick the headaches were daily headaches but she reported the headaches. Isn't that kind of what headaches, when you have a reasonable for a headache, isn't that what you do, you report how often you have the headaches to provide her in a normal course, Doctor?

  A. Proper treatment of headaches requires a good diary, a description of the headache and a description of what the treatment effort has been and a sustained record of attempts at medical care. I don't think we see that here. There is mention that she has headaches. That's not enough. You can't say you've got migraines, therefore you're disabled. That's not good enough.

  Q. Is the headache reasonably related to multiple sclerosis?

A. No.[23]

In her brief and reply brief, Plaintiff avers that Dr. Haynes' testimony should be afforded no credit. She argues the following:

> None of these reasons are sufficient to warrant further proceedings. Here, Dr. Haynes testified at the claimant's original hearing in 2019, and he inexplicably stated that headaches are not reasonably related to multiple sclerosis. (Tr. 53). This should disqualify his "specialist neurologist" testimony, as (1) migraine headaches are common in people with Relapsing Remitting Multiple Sclerosis (Tr. 790); (2) one study has found that 78% of newly diagnosed MS patients reported having headaches in the past month; and (3) headaches are caused by lesions in the brain or brainstem, as well as MS medications. Julie Stachowiak, PhD, An Overview of Headaches in MS, Verywell Health, Medically reviewed by Diana Apetauerova, MD, on September 10, 2020; updated on February 16, 2022; https://www.verywellhealth.com/headaches-in-multiple-sclerosis-2440798> (last visited August 26, 2024).

The Court concludes that Plaintiff's assertion that Dr. Haynes' testimony is so clearly erroneous as to be deemed meritless is not supported by the evidence which she cites in reliance of the argument, nor is it supported by prevailing medical opinion.

First, the specific medical record cited by Plaintiff at AR 790 provides that Plaintiff presented to Jessica Craddock, MD, for a second opinion regarding multiple sclerosis.[24] Plaintiff reported that she had severe panic attacks for years

---

[23] AR 51-53.

[24] AR 790.

ORDER - 9

and then began having vertigo 6-7 months prior.[25] She reported that the vertigo was accompanied by tingling sensations in her face and blurry vision.[26] Plaintiff also reported that she had daily headaches and migraines and had an MRI performed.[27] She reported that she had the headaches for many years and they would stop for several months at a time and then return for several months at a time.[28] She said that when she is stressed she will have tingling in her legs.[29]

Dr. Craddock assessed Plaintiff with relapsing remitting multiple sclerosis and stated that Plaintiff's brain and cervical spine MRI's were consistent with multiple sclerosis.[30] She noted that Plaintiff's symptoms consisted of progressive vertigo and intermittent tingling in her face, tightness in her shoulders and neck, and daily headaches.[31]

While Plaintiff is correct that Dr. Craddock stated that Plaintiff's symptoms of headaches and brain MRI were consistent with multiple sclerosis, she did not state that Plaintiff's migraines were caused by multiple sclerosis. Furthermore,

---

[25] Id.

[26] Id.

[27] Id.

[28] AR 791.

[29] AR 790.

[30] Id.

[31] Id.

Dr. Craddock noted that Plaintiff reported that she had a long history of migraines, which had waxed and waned over the years. This is not, as Plaintiff argues, a clear statement from Dr. Craddock that Plaintiff's migraines were related to multiple sclerosis. There is at least a question of whether Plaintiff's migraine headaches preceded the onset of MS for a substantial amount of time.

In support of her assertion that it is a widely accepted medical opinion that migraine headaches are causally related to multiple sclerosis Plaintiff also relied upon a medical article published on the website Verywell Health.[32] But after review of the article, authored in February 2022 by Julie Stachowiak, PhD, and reviewed by Diana Apetauerova, MD, the Court concludes this argument is not persuasive.

Plaintiff correctly quotes Dr. Stachowiak that migraines "are common in people with relapsing-remitting MS."[33] But Plaintiff is incorrect in her assertion that it is medically accepted that "headaches are caused by lesions in the brain or brainstem, as well as MS medications."[34] The article in fact states the opposite – that it is not a medically accepted fact.

In pertinent part, Dr. Stachowiak wrote:

> *Some* research suggests an association between MS lesions in the brain and an increased number of migraines and/or tension-type

---

[32] ECF No. 17.

[33] *Id.*

[34] ECF No. 17, p. 4.

ORDER - 11

> headaches. In addition, some people undergoing an acute MS relapse report a headache or migraine being the main symptom.
>
> Cluster headaches have been linked to MS lesions in the brainstem, especially in the part where the trigeminal nerve originates. This is the nerve involved with trigeminal neuralgia—one of the most painful MS symptoms.
>
> However, *other* studies suggest there is no link between MS and either migraines or tension headaches.
>
> One case-control study in Norway[35] involving over 1,750 participants found no increased risk of migraines or tension headaches in people with MS compared to the general population.[36]

Dr. Stachowiak's article does not unequivocally state that MS lesions cause migraine headaches, as Plaintiff asserts. Rather, the article makes it clear that there is a genuine difference of opinion among qualified medical experts as to whether migraine headaches are causally related to MS lesions.

Additionally, Cleveland Clinic reports the following regarding multiple sclerosis and headache on its website:

> Headaches, particularly migraine, appear to be reported more commonly in the MS population. Headaches can sometimes be associated with a relapse, but at the Mellen Center we do not consider

---

[35] Gustavsen MW, Celius EG, Winsvold BS, et al. *Migraine and frequent tension-type headache are not associated with multiple sclerosis in a Norwegian case-control study*. Mult Scler J Exp Transl Clin. 2016;2:2055217316682976. doi:10.1177/2055217316682976.

[36] Julie Stachowiak, PhD, *An Overview of Headaches in MS*, Verywell Health.

>isolated new headache to be a definite marker of a relapse of MS. Interferon Beta and fingolimod can increase the risk of headaches, especially in the first few months of therapy. Cervicogenic headaches are common and can be helped by physical therapy focused on the neck.
>
>Other than altering medicines which may induce headache, we treat headaches in MS the same way they are treated in the general public. There is nothing specific about the MS treatment. MS medications do no reduce headache in the MS population, and some may be associated with increased headache frequency (for example interferon betas and fingolimod). We often work with local neurologists or a headache center in the ongoing care of such headaches.[37]

The National Institute of Health, National Center for Biotechnology Information, states on its website: "People with multiple sclerosis (MS) have an increased incidence of headaches, although the comorbidity of headaches and MS is poorly understood."[38]

It does appear that there is a relationship between headaches and MS but that a genuine difference of opinion exists amongst medical experts as to whether there is a causal relationship. Based upon those facts, the Court is not in a position

---

[37] Cleveland Clinic, *Pain in Multiple Sclerosis Fact Sheet*, my.clevelandclinic.org/departments/neurological/depts/multiple-sclerosis/ms-approaches/pain-in-ms. (last viewed September 3, 2024.)

[38] The National Institute of Health, National Center for Biotechnology Information, Headache in Multiple Sclerosis - PMC (nih.gov) (last viewed September 3, 2024).

ORDER - 13

based upon the record before it to question the credentials of an experienced, board-certified physician.

Thus, as to the first factor, the Court finds that a remand for further proceedings will serve a legitimate purpose. Because there are inconsistencies and ambiguities in the medical evidence, the Court concludes that the record requires further development and, at the very least, an ALJ must reconcile the conflicting medical opinions.

### III.    Conclusion

On the basis of the medical expert testimony and vocational expert testimony, further proceedings are necessary. Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 16**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 10th day of September 2024

*Edward F. Shea*
EDWARD F. SHEA
Senior United States District Judge